L. L. SKAGGS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 90217. Promulgated October 18, 1938.

*Robert Ash*, *Esq.*, for the petitioner.
*Francis S. Gettle*, *Esq.*, for the respondent.

SMITH: The petitioner contests a deficiency in income tax for 1934 of $2,912.09, only a part of which is in controversy. The questions presented are (1) whether the petitioner is liable to income tax upon the total amount of the net rent received by him in 1934 from property constituting his separate estate located in California or upon only one-half thereof; (2) whether the petitioner is taxable upon the full amount of the gain realized from the sale of certain shares of Safeway Stores stock in 1934, or only upon one-half thereof.

The facts were stipulated.

Petitioner is a resident of Ft. Worth, Texas. He was domiciled in the State of Texas in 1934, and for many years prior thereto. In 1926 he acquired improved real estate in Oakland, California, which, in 1934, was leased. In January 1929 the petitioner, who previously had been married and divorced, married a second time. During 1934 he received from the Oakland property a net rent of $11,468.28.

In his income tax return for 1934 the petitioner reported the income from the Oakland real estate as community income and returned one-half of the net rent of $5,734.14 as his income. The respondent has determined that as the Oakland building had been acquired prior to the petitioner's marriage, and since under the California laws all the rents received from the Oakland real estate constituted petitioner's separate income, he is liable to income tax upon the net rent received in the amount of $11,468.28.

In 1926 Safeway Stores, which operated a chain of grocery stores in which petitioner was interested, was incorporated and petitioner took shares of stock in the corporation for his interest in the business. In 1934 the petitioner sold some of his shares of Safeway Stores stock at a capital gain of $16,863.70.

In his income tax return for 1934 the petitioner reported the taxable gain from the sale of the Safeway Stores stock as community income and included in his return one-half thereof, or $8,431.85. The respondent has determined that the profit from the sale of the stock was separate income of the petitioner and that the entire capital gain of $16,863.70 is taxable to him.

In his brief the respondent concedes that the second question involved in this proceeding, namely, the capital gain upon the sale of the shares of Safeway Stores stock, is ruled by W. T. Carter, Jr., 36 B. T. A. 853. In accordance therewith it is held that the petitioner is liable to tax on only one-half of the capital gain from the sale of the stock.

The issue remaining for determination relates to the taxability to the petitioner of rent received from real property located in California. The respondent insists that the total amount of the rent

received, namely, $11,468.28, was separate income and taxable to the petitioner in its entirety.

Income accruing to the matrimonial community in the State of Texas belongs equally to the husband and wife and is taxable to them equally. *Hopkins* v. *Bacon*, 282 U. S. 122; *Commissioner* v. *Wilson*, 76 Fed. (2d) 766. "The nature and extent of the community interests depends on the state law." *Commissioner* v. *Wilson*, *supra*.

Article 4613 of the Statutes of Texas, as enacted in 1917 and as readopted in the Revised Civil Statutes of 1925 (Acts of 41st Legislature, p. 66, ch. 32, par. 1), provides in part:

All property of the husband, both real and personal, owned or claimed by him before marriage, and that acquired afterwards by gift, devise, or descent, as also the increase of all lands thus acquired, *and the rents and revenues derived therefrom*, shall be his separate property. [Italics supplied.]

In 1929, section 4613 was amended by the deletion of the above italicized words "and the rents and revenues derived therefrom."

It was held in *Commissioner* v. *Wilson*, *supra*, that even for the years 1925 and 1926 the "rents and revenues" of the husband's separate property belong to the community; that the provisions to the contrary contained in section 4613 until its amendment in 1929 were invalid under the Constitution of the State of Texas; and that the word "increase" contained in the present statute has never been supposed to include rents—citing *Arnold* v. *Leonard*, 114 Tex. 535; 273 S.W. 799.

The Court of Claims, in *Hurd* v. *United States*, 22 Fed. Supp. 421, disagreed with the United States Circuit Court of Appeals for the Fifth Circuit in the *Wilson* case that rents from the husband's separate property were community income between 1925 and 1929. The court indicated, however, that it had no doubt but that after 1929 rents received from separate property were community income.

In *W. T. Carter, Jr., supra*, the Board stated:

Under the community property system, in the absence of a contrary statutory provision, it is the general rule that the increase, rents, and profits of the separate property of the spouses fall into the community, 31 C.J. 29, and this was the early rule in Texas prior to 1917, *Mitchell* v. *Mitchell*, 80 Tex. 101; 15 S.W. 705; *Dixon* v. *Sanderson*, 72 Tex. 359; 10 S.W. 535. And statutes expressly giving to the separate estate the increase or fruits of particular kinds of separate property impliedly exclude other exceptions to the general rule previously established that all issues and profits of the separate property fall into the community. 31 C.J. 31, citing *Howard* v. *York*, 20 Tex. 670; *Braden* v. *Gos*, 57 Tex. 37. Thus, the statutes above referred to did not abrogate or in any way affect the long established general rule recognized by the courts of Texas that the increase, rents, revenues, and profits of the separate personalty of either spouse belonged to the community.

The respondent contends, however, that the income from the rents from the real estate situated in California must be determined under

the laws of that state, which declare them to be the separate property of the owner of the real estate, and that the laws of the State of Texas are not controlling of the question.

We do not agree with this contention. While under the laws of the State of California rents from the separate estates of the spouses are their separate property—see section 163, Civil Code of California, 1927—this is not the law in the State of Texas as shown above, and in our opinion the status of the income from the rents in question must be determined under the laws of the State of Texas, where the petitioner was domiciled. Rent is said to be a chose in action, that is, personal property. *Richardson* v. *Neblett*, 122 Miss. 723; 84 So. 695. It was said in *State* v. *Royal Mineral Association*, 132 Minn. 232; 156 N. W. 128, that rents unaccrued are not personal property but are a part of the land until severed, and that rents due or past due are "simply an item of money due and payable." See also *People* v. *McComber*, 7 N. Y. S. 71. In *Broadwell* v. *Banks*, 134 Fed. 470, the court said:

* * * In the absence of any statutory provision to the contrary, it is elementary that the rents which accrued during the lifetime of the owner of the leased premises are personal property, and go to his personal representative as assets of the estate, * * *

The ownership and disposition of personal property is uniformly governed by the *lex domicilii*. *Black* v. *Zacharie & Co.*, 3 Howard, 482; *Whitney* v. *Dodge*, 105 Cal. 192; 38 Pac. 636. In *Thayer* v. *Clarke* (Tex. Civ. App.), 77 S. W. 1050, the court said:

* * * It is well settled that as to all personal property acquired during coverture the law of the matrimonial domicile controls, such property having in theory no fixed situs. As to all real estate so acquired the law of the state in which it is situated controls, * * *

See also *Snyder* v. *Stringer*, 116 Wash. 131; 198 Pac. 733; *Douglas* v. *Douglas*, 22 Idaho, 336; 125 Pac. 796; *Kraemer* v. *Kraemer*, 52 Cal. 305.

In *Thayer* v. *Clarke*, *supra*, the court further said:

* * * It is also the law in this state [Texas] that all personal property acquired during marriage is presumed to have been earned by one or the other or both members of the community during the existence of the marriage, and this presumption prevails until it is made to appear that it was owned by the one or the other prior to the marriage, or was acquired during marriage by gift, devise, or descent. * * *

The rents here in question were not owned by the petitioner before marriage and were not acquired by gift, devise, or descent. They were therefore earnings of the community under the Texas law.

We think that under the laws of the State of Texas petitioner's wife had a vested interest equal to that of the petitioner in the rents

from petitioner's real estate situated in the State of California at the time they were received and that accordingly only one-half of such income is taxable to the petitioner in his separate return. *Hopkins* v. *Bacon*, *supra*.

If the property here in dispute, that is, the rents from petitioner's real estate, had been acquired by the petitioner as his separate property while domiciled in California and brought into the State of Texas when he established his domicile there, a different rule might apply. See *In re Arms' Estate*, 186 Cal. 554; 199 Pac. 1053; § 649 McKay, Community Property. It is generally recognized that vested property rights are not affected by the owner's change of domicile and the removal of the property from a community state to a noncommunity state or vice versa.

The instant case is distinguishable from *John O'Neil*, 16 B. T. A. 614. There, it was held that oil royalties from the husband's separate real properties situated in Oklahoma, a noncommunity property state, were the separate income of the husband domiciled in Texas and were not income of the community. To the same effect is *Rosalie Hampton*, 31 B. T. A. 853.

The reasoning of the Board in the *O'Neil* case was that since the royalties from oil lands are not community income either in the State of Oklahoma, or in the State of Texas, where they are held to be "neither rents nor profits, within the meaning of the law making such common property"—citing *Stephens* v. *Stephens*, 292 S. W. 290—they are not to be treated as community income for the purpose of the Federal taxing statutes. It was pointed out that even if the land from which the royalties were received had been situated in the State of Texas, under the law of that state, the royalties would constitute separate and not community property. The following language was quoted from *Stephens* v. *Stephens*, *supra:*

The land is separate property. The oil in place is realty capable of distinct ownership, severance, and sale. It is a part of the corpus of appellee's sole estate. He conveyed his oil and received, as the principal consideration therefor, one-eighth of the production. No skill, labor, or supervision of either of the spouses, and no community property was expended in the sale or production. The oil and the proceeds thereof received by appellee were neither rent nor profits, within the meaning of the law making such common property, but the consideration for separate realty. * * *

Reference was made in our opinion in the *O'Neil* case to 31 Corpus Juris 32, where it is said:

* * * Under the general rule that the law of the situs determines whether land is separate or community property, revenues from land in a common-law state do not fall into the community, although the owner lives in a community-law state.

The stated rule, we think, should not be taken to mean that ordinary annual rentals from separate real estate situated outside of the state of the owner's domicile remain the separate property of the owner even when under the law of the domicile it belongs to the community. A rule of property established by decisions of the state courts or by state statutes is binding on the Federal courts. *Warburton* v. *White*, 176 U. S. 484; *Tyler* v. *United States*, 281 U. S. 497.

In the instant case the rents derived from petitioner's separate real estate constituted community income under the laws of the State of Texas, where the petitioner was domiciled, and are therefore taxable to the community.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*